**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DEBRA GOODMAN, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br> v.<br><br>CLARIFAI, INC., a Delaware corporation,<br><br>    Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Debra Goodman, on behalf of herself and all others similarly situated, brings this Class Action Complaint and Demand for Jury Trial against Defendant Clarifai, Inc. and alleges as follows upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief.

## NATURE OF THE ACTION

1. This case is about the surreptitious misappropriation and misuse of potentially hundreds of thousands of Illinois residents' biometric information by a tech startup named Clarifai.

2. Clarifai bills its artificial intelligence ("AI") tools as "[t]he fastest way to transform your unstructured image, video, text, and audio data into actionable insights." Clarifai's product lines include a facial recognition toolkit that relies on AI, machine learning ("ML"), and machine vision technology to identify and analyze faces in pictures and videos.

3. Like other businesses that harness the power of AI/ML to create facial recognition models, Clarifai needed an enormous amount of training data—in particular, pictures of people's faces—to build its tools.

4. Luckily for Clarifai—and unluckily for users of a popular dating service, OkCupid—one of Clarifai's funders, Corazon Capital, was in a position to help.

5. Corazon's co-founders, Sam Yagan and Max Krohn also co-founded the online dating service OkCupid. The OkCupid platform allows users to post profiles in order to match with and potentially meet romantic partners. Those profiles include such information as usernames, interests, hobbies, and users' pictures. OkCupid boasts approximately fifty million users and, consequently, has access to many millions of photographs.

6. Yagan and Krohn's connection to all three of these companies encouraged and enabled them to exfiltrate user photos from the OkCupid service and provide them to Clarifai. According to New York Times reporting, CEO of Clarifai, Matt Zeiler, explained that "Clarifai had access to OkCupid's photos because some of the dating site's founders invested in his company."[1] Specifically, on information and belief, Krohn used his personal email account to provide the photographs to Clarifai's CEO, Matthew Zeiler.

7. On information and belief, Clarifai used those images to train or refine its facial recognition software, a process that necessarily extracts biometric data in the form of maps of facial geometry.

8. Given the immutability of biometric information and the difficulty of completely hiding one's face in public, facial recognition poses severe risks to security and privacy. The capture and storage of faceprints leaves people vulnerable to data breaches and identity theft. It can also lead to unwanted tracking and invasive surveillance by making it possible to passively identify individuals in public places or, worse, in sensitive locations like health care facilities, addiction treatment centers, religious institutions, and more.

---

[1] Cade Metz, *Facial Recognition Tech Is Growing Stronger, Thanks to Your Face*, NEW YORK TIMES (July 13, 2019), https://www.nytimes.com/2019/07/13/technology/databases-faces-facial-recognition-technology.html

9. In recognition of these threats, more than a decade ago the Illinois General Assembly enacted the Illinois Biometric Information Privacy Act ("BIPA"), which protects people against the surreptitious and nonconsensual capture of their biometric identifiers, including faceprints. 740 ILCS 14/15(b). In enacting BIPA, the Legislature explained: "Biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse [and] is at heightened risk for identity theft." 740 ILCS 14/5(c).

10. Clarifai's brazen disregard for individual privacy rights violates Illinoisans' rights under BIPA, which was specifically designed to protect Illinois residents from this kind of underhanded behavior.

## PARTIES

11. Plaintiff Debra Goodman is a citizen and resident of the State of Illinois.

12. Defendant Clarifai is a Delaware corporation headquartered in New York, New York.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) because (i) at least one member of the Class (defined below) is a citizen of a different state than any Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (iii) none of the exceptions under that section apply.

14. This Court has personal jurisdiction over Defendant because its principal place of business is in this District and the wrongful conduct giving rise to this case occurred in, was directed to, or emanated from this District.

15. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant resides in this District.

**FACTUAL BACKGROUND**

**I.   The Use of Biometrics and Consumer Privacy**

16. "Biometrics" refers to technologies used to identify an individual based on unique physical characteristics. Common biometric identifiers include retina or iris scans, fingerprints, voiceprints, or hand or face geometry scans. One of the most prevalent uses of biometrics is facial recognition technology, which works by scanning an image for human faces, extracting facial feature data from a photograph or image of a human face, generating a "faceprint" from the image through the use of facial recognition algorithms, and then comparing the resultant faceprint to other faceprints stored in a faceprint database. If a database match is found, a person may be identified.

17. Facial recognition technology poses a serious threat to individuals' privacy and security. It is possible to use this technology to identify people at a distance and in crowds for any number of malign or abusive purposes, including targeting specific protesters at marches in order to harass them. And given its increasingly wide use in identity verification, facial biometrics can be abused by criminals to breach consumers' accounts or steal their identities.

18. Importantly, as noted by the Federal Trade Commission and others, biometric information differs from other identifiers such as Social Security or credit card numbers. While more mundane identifiers can be changed if compromised or stolen, biometric identifiers linked to a specific voice or face cannot. These unique and permanent biometric identifiers, once exposed, leave victims with no means to prevent identity theft and unauthorized tracking.

**II.     The Biometric Information Privacy Act**

19.     Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," the Illinois Legislature enacted BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

20.     A "biometric identifier" is defined as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10.

21.     In turn, "biometric information" means "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id.*

22.     BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

   i.    informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;

   ii.   informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

   iii.  receives a written release executed by the subject of the biometric identifier or biometric information . . ."

740 ILCS 14/15(b).

23.     BIPA also establishes standards for how companies must handle Illinois consumers' biometric identifiers and biometric information. *See, e.g.*, 740 ILCS 14/15(a), (c)–(d). For instance, BIPA requires companies to develop and comply with a written policy—made available to the public—establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting

5

such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a)

24.     BIPA's narrowly tailored provisions place no absolute bar on the collection, sending, transmitting, or storing of biometric data. For example, BIPA does not limit what kinds of biometric data may be collected, sent, transmitted, or stored. Nor does BIPA limit to whom biometric data may be sent or transmitted, or by whom it may be stored. BIPA simply mandates that entities wishing to engage in that conduct must make proper disclosures, obtain written consent, and implement certain reasonable safeguards.

### III.    Clarifai's Use of OkCupid Photos Violated BIPA

25.     Clarifai provides a portfolio of AI-driven tools that can perform numerous tasks, many of which concern the automated assessment and classification of information in large data sets. One component of Clarifai's work is its facial recognition software, which comes complete with pre-trained models developed by the company.

26.     For example, Clarifai markets its Armada Predict tool as being capable of facial detection and recognition. On the Armada Predict product page of its website, Clarifai claims the tool can "[r]ecognize who is in your images and videos and predict specific known identities," with users able to "[g]et started in minutes using [Clarifai's] advanced pre-trained facial recognition models."

27.     This solution relies on the extraction and analysis of biometric information. For example, it can use "facial features—like the distance between eyes, the shape of your nose, or the contour of your cheekbones—to determine whether a set of faces belong to the same person." (*See* Figure 1.)



**(Figure 1)**

28. In order to build its facial recognition software and create pre-trained models, Clarifai would have needed an enormous training database of photographs. As part of the process, Clarifai's software would map the facial geometry of these photographs. Using modern AI/ML techniques, the software would then refine its ability to identify and compare faces.

29. Corazon Capital, one of Clarifai's funders, proved to be one source of photographs for Clarifai.

30. Corazon is a venture capital firm based in Chicago, Illinois. Like other such firms, Corazon makes money when the companies that it invests in succeed. Thus, venture capital firms like Corazon provide assets to startups for pecuniary reasons, not eleemosynary ones, betting that the businesses' success will redound to their own.

31. In order to give Clarifai a leg up over the competition, thereby hedging the bet he made when investing in Clarifai, Corazon's co-founder Max Krohn surreptitiously provided OkCupid's database of user photographs to Clarifai.

32. Clarifai mined this enormous cache of photographs for OkCupid users' biometric data and used it to improve its tools' capabilities.

33. OkCupid users provided their photographs to one company with the belief that these photographs would be used as part of a dating service, not handed to a different profit-

seeking venture bent on extracting users' biometric features. OkCupid users were given neither notice nor any opportunity to consent to Clarifai's collection, use, and storage of their biometric identifiers. Indeed, but for a single New York Times article on facial recognition broadly, OkCupid users may never have known about Clarifai's actions at all.

34. This flagrant misuse of consumers' biometric data for its own benefit constitutes a violation of BIPA.

## FACTS SPECIFIC TO PLAINTIFF GOODMAN

35. Plaintiff Debra Goodman began using OkCupid on or about September 2011 and continues to maintain an active account.

36. As part of her use of OkCupid over the years, Plaintiff Goodman has uploaded several photographs to the service.

37. Plaintiff Goodman's photographs existed in OkCupid's database at the time when Defendant Clarifai misappropriated OkCupid's database of photographs in order to train its facial recognition algorithms.

38. On information and belief, Plaintiff Goodman had her biometric identifiers extracted from her OkCupid profile photographs by Clarifai, which used them to build or enhance the facial recognition tools from which it derives revenue.

39. Clarifai did not notify Plaintiff Goodman that it was collecting, using, or storing her biometric identifiers.

40. At no time did Clarifai notify Plaintiff Goodman about the purpose or length of time for which it was collecting, using, or storing her biometric identifiers.

41. At no time did Plaintiff Goodman provide her consent, whether in writing or any other means, for Clarifai to extract her biometric information from her photographs in order to

train its facial recognition algorithms.

42.  Had Plaintiff Goodman been asked to provide consent to Clarifai for the above-mentioned use of her biometric information, she would have declined.

## CLASS ALLEGATIONS

43.  **Class Definition**: Plaintiff Debra Goodman brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of herself and a Class defined as follows:

> All Illinois residents whose biometric information or biometric identifiers, in the form of scans of facial geometry, was collected, used, or stored by Clarifai.

The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

44.  **Numerosity**: The exact number of members of the Class is unknown to Plaintiff at this time, but it is clear that individual joinder is impracticable, as OkCupid has millions of members, at least thousands of which reside in Illinois. Ultimately, members of the Class will be identified through Defendant's records.

45.  **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class

include, but are not necessarily limited to the following:

    (a)    Whether Defendant captured, collected, or otherwise obtained Plaintiff's and the Class's biometrics;

    (b)    whether Defendant properly informed Plaintiff and the Class that it captured, collected, used, and stored their biometrics;

    (c)    whether Defendant obtained a written release to capture, collect, use, and store Plaintiff's and the Class's biometrics;

    (d)    whether Defendant's violations of BIPA were committed intentionally, recklessly, or negligently.

46.    **Typicality:** Plaintiff's claims are typical of the claims of the other members of the Class in that Plaintiff and the members of the Class sustained damages arising out of Defendant's uniform wrongful conduct.

47.    **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff nor her counsel have any interest adverse to those of the other members of the Class.

48.    **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply and affect members of the Class uniformly and Plaintiff's challenge of these policies hinges on

Defendant's conduct with respect to the Class as a whole, not on facts or laws applicable only to Plaintiff. Plaintiff and the members of the Class have suffered harm and damages as a result of Defendant's unlawful and wrongful conduct.

49. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions ensured.

### FIRST CAUSE OF ACTION
### Violation of 740 ILCS 14/15(a)
### (On behalf of Plaintiff and the Class)

50. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

51. Clarifai is corporation and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

52. Plaintiff and the Class are individuals who had their "biometric identifiers" collected by Clarifai (in the form of their facial scans), as explained in detail in Section III. *See*

*id.*

53. Plaintiff's and the Class's biometric identifiers or information based on those biometric identifiers were used by Clarifai to identify them, constituting "biometric information" as defined by BIPA. *See id.*

54. Clarifai develops and sells AI-powered software tools, including facial recognition software.

55. Clarifai obtained photos of OkCupid users through its connection with Max Krohn, an OkCupid co-founder and Clarifai investor.

56. Clarifai used these photographs to train its facial recognition algorithms, necessarily conducting scans of OkCupid users' facial geometry.

57. BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention—and, importantly, deletion—policy. Specifically, those companies must: (i) develop a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the company's last interaction with the individual); (ii) make that written policy publicly available, and (iii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

58. Clarifai fails to comply with these BIPA mandates.

59. Clarifai hosts a publicly available privacy policy but does not include a written retention schedule or guidelines for the destruction of biometric data anywhere in this policy or otherwise available for review by the public.

60. On behalf of herself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by

requiring Defendant to comply with BIPA's requirements for the collection, storage, and use of biometrics as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA; and (4) reasonable attorneys' fees and costs and other litigation expenses. *See* 740 ILCS 14/20.

**SECOND CAUSE OF ACTION**
**VIOLATION OF 740 ILCS 14/15(b)**
**(On behalf of Plaintiff and the Class)**

61. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

62. Clarifai is corporation and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

63. Plaintiff and the Class are individuals who had their "biometric identifiers" collected by Clarifai (in the form of their facial scans), as explained in detail in Section III. *See id.*

64. Plaintiff's and the Class's biometric identifiers or information based on those biometric identifiers were used by Clarifai to identify them, constituting "biometric information" as defined by BIPA. *See id.*

65. BIPA requires private entities to obtain a written release from individuals prior to acquiring their biometric data.

66. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first:

    i    informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;

    ii    informs the subject . . . in writing of the specific purpose and length of term for

13

>> which a biometric identifieror biometric information is being collected, stored, and used; **and**
>
> iii  receives a written release executed by the subject of the biometric identifier or biometric information . . ."

740 ILCS 14/15(b) (emphasis added).

67. Clarifai fails to comply with these BIPA mandates.

68. Clarifai collected, used, and stored Plaintiffs' and the Class's biometrics without first obtaining the written release required by 740 ILCS 14/15.

69. Clarifai never informed Plaintiff and the Class in writing that their biometrics were being collected, stored, and used, nor did Clarifai inform Plaintiff and the Class in writing of the specific purpose(s) and length of term for which their biometrics were being collected, stored, and used as required by 740 ILCS 14/15.

70. By collecting, storing, and using Plaintiffs' and the Class's biometrics as described herein, Clarifai violated Plaintiffs' and the Class's rights to privacy in their biometrics as set forth in BIPA. *See* 740 ILCS 14/1, *et seq*.

71. On behalf of herself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, and use of biometrics as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA; and (4) reasonable attorneys' fees and costs and other litigation expenses. *See* 740 ILCS 14/20.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Goodman, on behalf of herself and the Class, respectfully request that this Court enter an order:

      A.      Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as class representative of the Class, and appointing their counsel as Class Counsel;

      B.      Declaring that Clarifai's actions, as described above, violate BIPA, 740 ILCS 14/1, *et seq.*;

      C.      Awarding statutory damages of $5,000.00 for each and every intentional and reckless violation of BIPA, or alternatively, statutory damages of $1,000.00 for each and every negligent violation of BIPA;

      D.      Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, *inter alia*, an Order requiring Clarifai to comply with BIPA;

      E.      Awarding Plaintiff and the Class their reasonable attorneys' fees and costs and other litigation expenses;

      F.      Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

      G.      Awarding such other and further relief as equity and justice may require.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

**DEBORAH GOODMAN**, individually and on behalf of all others similarly situated,

Dated: March 21, 2022      By: /s/ *Benjamin R. Osborn*
                *One of Plaintiff's Attorneys*

Benjamin R. Osborn
(SBN #4890869)
ben@benosbornlaw.com
LAW OFFICES OF BENJAMIN R. OSBORN
102 Bergen Street
Brooklyn, New York 11201
Tel: 347.645.0464

J. Eli Wade-Scott*
ewadescott@edelson.com
Schuyler Ufkes*
sufkes@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Admission *pro hac vice* to be sought